# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

FRANCIS J. HUMPHRIES,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-377
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 21).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in August 2009, alleging disability since June 1, 2007, due to degenerative disc disease, a gunshot wound to the head, and depression.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before ALJ Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On September 12, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for

---

[1] Plaintiff subsequently amended the alleged onset date to July 29, 2009.

review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

Plaintiff initially filed applications for DIB and SSI in September 2007, alleging disability since November 2004. ALJ Larry A. Temin issued a decision on July 28, 2009, finding plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 40-53).

In rendering her decision on plaintiff's subsequent DIB and SSI applications, ALJ Shaughnessy recognized she was bound under principles of administrative res judicata by ALJ Temin's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's residual functional capacity (RFC).[2] (Tr. 19, citing Acquiescence Ruling (AR) 98-4(6); *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir. 1997)). ALJ Shaughnessy found that plaintiff had not produced "new and material evidence documenting a significant change" in her condition. (*Id.*). She therefore found that ALJ Temin's previous RFC finding was binding. (*Id.*).

ALJ Shaughnessy applied the sequential evaluation process and made the following

---

[2] ALJ Temin found that from November 22, 2004, through the date of his decision, plaintiff retained the RFC to perform the following work activity: "She can lift/carry up to 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for up to 6 hours in an eight-hour workday. She should only occasionally stoop, kneel, crouch and climb ramps/stairs. She should not crawl, climb ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery. [She] is able to remember and carry out only short and simple instructions. She cannot interact with the general public, and cannot interact more than occasionally with coworkers or supervisors. [Her] job should not require more than ordinary and routine changes in work setting or duties, and she is able to make only simple work related decisions." (Tr. 44).

findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since July 29, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, chondromalacia and meniscal tear of the knees, status post arthroscopic surgery, bipolar disorder, and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently and she can stand and/or walk for up to 6 hours in an 8-hour workday. She can occasionally stoop, kneel, crouch, and climb ramps or stairs and she can never crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights or around hazardous machinery. Mentally, the [plaintiff] can remember and carry out only short and simple instructions. She cannot interact with the general public and she cannot interact more than occasionally with coworkers or supervisors. Her job should not require more than ordinary and routine changes in work setting or duties and the [plaintiff] is able to make only simple work related decisions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1957 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41

---

[3] Plaintiff's past relevant work was as a detailer, catcher, housekeeper, and pizzamaker, which were performed at the medium level of exertion, and cashier/bartender, which was performed at the light level of exertion. (Tr. 28).

and 20 CFR Part 404, Subpart P, Appendix 2).[4]

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 29, 2009, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 22-29).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

---

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as motel/night clerk (1,451 jobs locally and 306,000 jobs nationally), cleaner (2,198 jobs locally and 365, 000 jobs nationally), and kitchen helper (946 jobs locally and 136,000 jobs nationally). (Tr. 29).

disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond*, 126 F.3d at 841; AR 98-4(6), 1998 WL 283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond*, 126 F.3d at 842. The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6), 1998 WL 283902 (June 1, 1998). AR 98-4(6) does not address what constitutes "new and material" evidence. In the context of a remand under 42 U.S.C. § 405(g), "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Deloge v. Comm'r of Soc. Sec. Admin.*, 540 F. App'x 517, 519 (6th Cir. 2013) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein, 496*

6

U.S. 617, 626 (1990)). "Such evidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988)).

**D. Specific Errors**

A number of the pertinent medical findings have been summarized by plaintiff in the Statement of Errors and the ALJ in her decision and will not be repeated here. (Doc. 14 at 2-3; Tr. 22, 25-27). Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) ALJ Shaughnessy erred in adopting the findings made in ALJ Temin's July 28, 2009 decision because there is new and material evidence that warrants a departure from the prior RFC finding; (2) the ALJ failed to adequately accommodate plaintiff's "moderate" impairment in concentration, persistence and pace in the RFC; and (3) the ALJ's credibility analysis is unreasonable and is not supported by substantial evidence.

**1. The ALJ erred by failing to consider "new and material" evidence related to plaintiff's psychiatric impairment.**

**a. There is new evidence related to plaintiff's psychiatric impairment.**

In the prior decision, ALJ Temin found that plaintiff's mental impairments did not satisfy the "B" criteria of the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1, because plaintiff had only mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence or pace. (Tr. 43). Upon review of the medical evidence of record, ALJ Temin noted that plaintiff had been prescribed Valium and antidepressants for two years by her physician but the ALJ found no evidence of any mental

health treatment in the records. (Tr. 48). Thus, ALJ Temin did not consider opinions issued by any treating mental health sources in fashioning the RFC. However, ALJ Temin considered and gave weight to reports by two consultative examining psychologists, Michael T. Farrell, Ph.D., and Nancy Schmidtgoessling, Ph.D. (Tr. 48-51), and two state agency reviewers (Tr. 50).

ALJ Temin gave "little weight" to Dr. Schmidtgoessling's opinion that plaintiff was markedly limited in the ability to understand and remember very short and simple instructions and that she suffered many other disabling limitations. (Tr. 50). The ALJ gave "little weight" to Dr. Farrell's conclusion that plaintiff could not work but "significant weight" to Dr. Farrell's opinion suggesting plaintiff had moderate limitations in social functioning and in maintaining concentration, persistence, or pace. (*Id.*). The ALJ gave "great weight" to the state agency reviewer's opinion that plaintiff had mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (*Id.*). In establishing plaintiff's mental RFC, the ALJ gave "some weight" to Dr. Farrell's opinion to the extent Dr. Farrell found no limitations in plaintiff's ability to follow simple one and two-step job instructions and moderate limitations in her ability to attend, concentrate and persevere on work tasks and in her ability to relate to others. (Tr. 51). The ALJ also gave "some weight" to the state agency reviewer who adopted Dr. Farrell's opinion. (*Id.*). ALJ Temin concluded that due to problems with memory and concentration, plaintiff could remember and carry out only short and simple instructions; because of her anxiety and moderate limitations in her ability to interact appropriately, she could not interact with the general public and could not interact more than occasionally with coworkers or supervisors; because of reduced stress tolerance and anxiety, her job should not require more than ordinary and routine changes in work setting or duties; she

8

could not make complex work-related decisions; and she could make only simple work-related decisions. (*Id.*).

ALJ Shaughnessy found that she was bound by ALJ Temin's prior RFC finding pursuant to *Drummond*, 126 F.3d 837, and AR 98-4(6), because plaintiff had not produced "new and material evidence documenting a significant change" in her condition. (Tr. 19). In rendering her decision, ALJ Shaughnessy considered two mental RFC assessments completed by Dr. Karen Miday, M.D., a psychiatrist who began treating plaintiff in July 2009, and Barbara Pinson, LICDC, a therapist who began counseling plaintiff at that same time. (Tr. 26-27). The first assessment states that plaintiff was last seen on January 19, 2010. (Tr. 322). Plaintiff's functional abilities were generally assessed as "not significantly limited" to "moderately limited"; Dr. Miday and Ms. Pinson opined that plaintiff was unemployable; and they indicated that plaintiff's functional limitations were expected to last between 9 to 11 months. (Tr. 321-22).

The second assessment is dated July 5, 2011. (Tr. 427-32). Dr. Miday and Ms. Pinson assessed plaintiff's mental abilities and aptitudes needed to do various types of work as generally "limited but satisfactory" or "seriously limited, but not precluded." (Tr. 429-30). They opined that plaintiff had the following functional limitations: "none to mild" restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence or pace. (Tr. 430).

ALJ Shaughnessy gave "great weight" to Dr. Miday's July 2011 mental RFC assessment, acknowledging that Dr. Miday found plaintiff's mental abilities and aptitudes to perform work were "limited but satisfactory" or "seriously limited, but not precluded." (Tr. 26, citing Tr. 429-

30). ALJ Shaughnessy specifically noted that Dr. Miday opined plaintiff had a limited but satisfactory ability to understand, remember, and carry out short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and respond appropriately to changes in a routine work setting, and she was seriously limited but not precluded in her ability to maintain attention for 2-hour segments, work in coordination or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the public, and maintain socially appropriate behavior. (*Id.*). ALJ Shaughnessy found as follows:

> Although Dr. Miday assessed a GAF of 50,[5] which suggests serious limitations, her assessment of the claimant's mental abilities indicates only moderate limitations consistent with those detailed in the RFC above; therefore, Dr. Miday is given great weight.

(Tr. 26-27).

ALJ Shaughnessy gave only "some weight" to the January 2010 mental RFC assessment, finding as follows:

> Some weight is given to this assessment, as the moderate limitations are consistent with the RFC detailed above. However, the [ALJ] finds that the medical evidence of record supports a finding of severe mental limitations and the moderate mental limitations opined by Ms. Pinson and Dr. Miday are inconsistent with their finding of disability.

(Tr. 27).

---

[5] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Konecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score of 41 to 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, p. 34 (4th ed. 2000).

**b. The ALJ did not properly weigh the new evidence related to plaintiff's mental impairment.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[6]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (emphasis in the original and quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

Here, ALJ Shaughnessy failed to evaluate new evidence provided by plaintiff's treating psychiatrist, Dr. Miday, in accordance with Sixth Circuit precedent and the Social Security regulations. The ALJ gave varying weight to the two assessments completed by plaintiff's treating psychiatrist without addressing whether those opinions were entitled to controlling weight and without providing good reasons for the weight the ALJ decided to give the assessments.

First, the ALJ did not specifically address whether Dr. Miday's July 2011 assessment was entitled to controlling weight. The ALJ indicated only that she was giving "great weight" to Dr.

Miday's July 2011 assessment because Dr. Miday assessed plaintiff's mental abilities as being

only "moderately limited" consistent with the moderate limitations in the RFC. (Tr. 26-27).

However, it appears the ALJ either did not fully credit Dr. Miday's report or she overlooked a

portion of the report because in addition to assessing moderate limitations, Dr. Miday imposed

*marked* functional limitations in two areas: maintaining social functioning and maintaining

concentration, persistence or pace. (Tr. 430). The ALJ made no mention whatsoever of Dr.

Miday's findings of marked limitations and did not discuss whether Dr. Miday's assessment of

plaintiff's mental functional limitations was well-supported by medically acceptable clinical and

laboratory diagnostic techniques and was not inconsistent with other substantial evidence in the

case record. *See Blakley*, 581 F.3d at 406. It is not clear from the ALJ's opinion whether the ALJ

simply overlooked this portion of Dr. Miday's assessment or whether she rejected Dr. Miday's

finding of marked functional limitations for reasons that are not apparent from the ALJ's decision.

The ALJ's omission is particularly problematic because the ALJ addressed the apparent

inconsistency between the GAF of 50 assessed by Dr. Miday, which is indicative of serious

symptoms, and the moderate limitations assessed by Dr. Miday but did not determine whether the

GAF was consistent with the marked functional limitations Dr. Miday assessed. (Tr. 26-27).

Whatever the reason for the ALJ's omission, the ALJ failed to comply with the Social Security

regulations and applicable law by (1) failing to consider whether Dr. Miday's assessment was

entitled to controlling weight (*see Gayheart*, 710 F.3d at 376, citing 20 C.F.R. § 404.1527(c)(2)),

and (2) weighing Dr. Miday's opinion without addressing the marked functional limitations the

---

[6] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion which was previously found at § 404.1527(d) is now found at § 404.1527(c).

treating psychiatrist assessed which, if credited, are completely inconsistent with the ALJ's

finding of only moderate limitations. *See Lowery v. Comm'r,* 55 F. App'x 333, 339 (6th Cir.

2003) (quoting *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir. 1995) (an ALJ "must articulate, at some

minimum level, his analysis of the evidence to allow the appellate court to trace the path of his

reasoning")).

Second, the ALJ erred in weighing Dr. Miday's January 2010 assessment. Although the

ALJ was not bound by Dr. Miday's January 2010 opinion, the ALJ was obligated to articulate

"good reasons" based on the evidence of record for giving "some weight" to the treating

psychiatrist's opinion if she chose not to give it controlling weight, *Wilson,* 378 F.3d at 544, and

to articulate her analysis of the evidence in such a manner that the reviewing court might follow

her reasoning. *Lowery,* 55 F. App'x at 339. The ALJ failed to comply with either requirement.

Instead, the ALJ attempted to explain her reasons for discounting the opinion of the treating

psychiatrist as follows:

> Some weight is given to this assessment, as the moderate limitations are consistent
> with the RFC detailed above. However, the undersigned finds that the medical
> evidence of record supports a finding of severe mental limitations and the
> moderate mental limitations opined by Ms. Pinson and Dr. Miday are inconsistent
> with their finding of disability.

(Tr. 27). The ALJ's reasons for discounting this assessment are impossible to discern from these

statements. Her failure to articulate the reasons for the weight given ALJ Miday's January 2010

opinion denotes a lack of substantial evidence. *Blakley,* 581 F.3d at 407.

Rather than relying on the opinions of the treating psychiatrist, the ALJ gave "great

weight" to the opinions of the state agency reviewing psychologists, Dr. Roy Shapiro, Ph.D. and

Dr. Karla Voyten, Ph.D., both of whom adopted Dr. Temin's initial mental RFC. (Tr. 27, citing

Tr. 348-51, 365). These reports do not provide substantial support for the ALJ's decision to adopt

the prior mental RFC finding. ALJ Shaughnessy adopted the opinion of Drs. Shapiro and Voyten

without examining the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c).

Instead, ALJ Shaughnessy adopted the reviewing psychologists' assessments for the sole reason

that the prior RFC "remains consistent with the medical evidence of record as a whole." (Tr. 27).

The ALJ's failure to articulate her rationale for giving the most weight to the reviewing

psychologists was in error and contravenes the Social Security regulations, §§ 404.1527(e)(2)(ii),

416.927(e)(2)(ii), which provide in relevant part:

> Unless a treating source's opinions is given controlling weight, the administrative
> law judge *must explain* in the decision the weight given to the opinions of a State
> agency medical or psychological consultant or other program physician,
> psychologist, or other medical specialist, *as the administrative law judge must do for
> any opinions* from treating sources, nontreating sources, and other nonexamining
> sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (emphasis added). *See also* Social Security

Ruling 96-6p, 1996 WL 374180, at *1 (July 2, 1996) (ALJs "may not ignore these opinions and

must explain the weight given to these opinions in their decisions").

 The ALJ's failure to articulate her rationale for giving "great weight" to the opinions of

the state agency reviewing psychologists is particularly problematic under the circumstances

presented here. The ALJ gave "great weight" to the reviewing psychologists' assessments and to

the July 2011 assessment of plaintiff's treating psychiatrist, Dr. Miday, despite apparent

inconsistencies between the assessments: Dr. Miday found marked limitations in two areas of

functioning (Tr. 430), while the reviewing psychologists found only moderate limitations in those

same areas. (Tr. 317, 350, 365). However, ALJ Shaughnessy never acknowledged or attempted

to reconcile the apparent inconsistencies in the opinions concerning plaintiff's functional limitations. (Tr. 26-27).

The absence of a clear explanation by the ALJ of the factors she considered in crediting Dr. Shapiro and Dr. Voyten's opinions over Dr. Miday's opinion prevents the Court from conducting any meaningful judicial review of the ALJ's decision. *See May v. Astrue*, No. 3:09-cv-090, 2009 WL 4716033, at *10 (S.D. Ohio Dec. 9, 2009). "Without some reasons why the ALJ credited a state agency medical source, there is no way to determine whether the ALJ actually applied the correct legal criteria, *i.e.,* the regulatory factors listed in § 404.1527[c], or whether the ALJ merely accepted the opinion without evaluating it under the factors required by the Regulations, *see* 404.1527[e](2)(ii), and Rulings, *see* Soc. Sec. Ruling 96-6p, 1996 WL 374180." *Id*. Thus, the ALJ erred by failing to set forth specific, valid reasons for the weight afforded the reports of the various mental health sources of record.

The ALJ's error is not harmless. Dr. Miday's assessments are "new" evidence because Dr. Miday did not complete them until after ALJ Temin issued the prior decision on July 28, 2009, and mental health assessments by Dr. Miday or any other treating psychiatrist were not available prior to that date. Further, the assessments are "material" because they include findings of marked functional limitations which, if credited, show a significant decline in plaintiff's psychiatric condition over that found by ALJ Temin in the July 28, 2009 decision. Because the ALJ failed to consider and properly weigh this medical evidence, the ALJ's decision that plaintiff failed to produce "new and material" evidence of a significant change in her mental condition is not supported by substantial evidence. Plaintiff's first assignment of error should be sustained on this basis.

16

**2. The ALJ erred by failing to consider "new and material" evidence of plaintiff's physical impairments.**

Plaintiff's first assignment of error should be sustained for the additional reason that there is "new and material" evidence related to plaintiff's physical condition that postdates ALJ Temin's July 28, 2009 decision, which ALJ Shaughnessy failed to consider.

In the prior decision, ALJ Temin found that plaintiff's severe impairments included the physical impairments of lumbosacral spine degenerative disc disease and chronic obstructive pulmonary disease (COPD)/emphysema. (Tr. 42). ALJ Temin imposed the following physical work restrictions in the RFC finding to account for these impairments: "[Plaintiff] can lift/carry up to 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for up to 6 hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch and climb ramps/stairs. She should not crawl, climb ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery." (Tr. 44).

In her decision, ALJ Shaughnessy found that plaintiff had the following severe physical impairments: degenerative disc disease of the lumbar spine, chondromalacia and meniscal tear of the knees, status post arthroscopic surgery. (Tr. 22). The ALJ noted that plaintiff complained of knee pain and that the record included the following objective evidence related to right and left knee impairments, all of which postdates ALJ Temin's July 28, 2009 decision: (1) a September 30, 2009 MRI of plaintiff's left knee showing some moderate to severe chondromalacia (Tr. 302); arthroscopic chondroplasty of the patellofemoral joint which plaintiff underwent on October 27, 2009 (Tr. 294); diagnosis of meniscal tear with chondromalacia and arthritis of the right knee made on April 30, 2010 (Tr. 404); and arthroscopic synovectomy of the medial, lateral and anterior joints, arthroscopic chondroplasty of the medial and lateral femoral condyles, and partial

medial meniscectomy of the right knee performed on May 11, 2010 (Tr. 461). (Tr. 22). ALJ

Shaughnessy discredited plaintiff's complaints of knee pain. The ALJ found the recommendation

of Dr. Gary Ray, M.D., a physician who treated plaintiff for her back and knee pain, that plaintiff

"exercise and walk 'as much as possible to maintain her strength and motion' [Tr. 424]" was

inconsistent with plaintiff's allegations of "debilitating back and knee pain." (Tr. 26). In

discounting plaintiff's complaints of disabling knee pain, the ALJ also relied on post-operative

treatment notes dated November 2009, which reported that plaintiff was "doing well" overall after

her left knee surgery, her motion was improving, and she was having less pain, soreness and

discomfort. (Tr. 26, citing 300).

     In fashioning the RFC, the ALJ gave "great weight" to the opinions of two state agency

physicians who reviewed the evidence of record and assessed plaintiff's physical RFC: Dr. Leslie

Green, M.D., and Dr. Walter Holbrook, M.D. (Tr. 27, citing Tr. 340-47, 366). Dr. Green

completed a physical RFC assessment on March 5, 2010. (Tr. 340-47). He reviewed office visit

notes and findings related to plaintiff's left knee from September and November 2009. (Tr. 341-

42). Dr. Green noted that post-surgical office visits notes from November 6 and 13, 2009,

showed that plaintiff was doing well, her motion was improving on a regular basis, and she was

having less pain, soreness and discomfort. (Tr. 341-42). Dr. Green adopted the prior RFC for

light work pursuant to AR 98-4(6). (Tr. 342). Dr. Holbrook reviewed the medical evidence and

issued an opinion on June 8, 2010, affirming Dr. Green's opinion on reconsideration. (Tr. 366).

He noted that plaintiff complained of right knee pain, but Dr. Holbrook did not mention any

objective medical findings related to plaintiff's right knee. (*Id*.). ALJ Shaughnessy adopted the

reviewing physicians' RFC assessments on the sole ground the RFC was "consistent with the

medical evidence of record as a whole, including the findings on examination" discussed earlier
in her decision. (Tr. 27).

The ALJ's decision to adopt the opinions of the state agency reviewing physicians finding
no change in plaintiff's physical RFC subsequent to the prior ALJ decision is not supported by
substantial evidence.[7] An ALJ must adhere to certain governing standards when assessing the
medical evidence in support of a disability claim. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,
723 (6th Cir. 2014) (citing *Wilson*, 378 F.3d at 545). "Chief among these is the rule that the ALJ
must consider all evidence in the record when making a determination, including all objective
medical evidence, medical signs, and laboratory findings." *Id.* (citing 20 C.F.R. §§
404.1520(a)(3), 404.1512(b), 404.1513). The ALJ failed to follow this paramount rule in this
case.

The only examination findings related to plaintiff's knees that the ALJ discussed in her
decision were the post-operative notes from November 6 and 13, 2009, which showed
improvement immediately following plaintiff's October 2009 left knee surgery. (Tr. 26, citing Tr.
300). Drs. Green and Holbrook discussed these post-operative records from November 2009
related to plaintiff's left knee when issuing their reports. (Tr. 341-42, 366). However, the
reviewing physicians did not mention subsequent February 2010 treatment notes of plaintiff's
treating orthopedist, Dr. Robert Hill, D.O., indicating that plaintiff was administered a Synvisc
injection for ongoing pain in her left knee and noting right knee symptoms which included

---

[7] The ALJ also stated in her opinion that she was giving "some weight" to the physical RFC assessment by Dr. E.
Ringel, M.D., dated November 19, 2011, finding no significant physical limitations but indicating plaintiff was
unemployable. (Tr. 27, citing Tr. 246). However, this assessment, which does not contain any findings related to
plaintiff's knees, is actually dated November 9, 2007, and therefore does not constitute new evidence. (Tr. 246-47).

puffiness, guarded range of motion, tenderness, and indications plaintiff may have been transferring weight from the left to the right. (Tr. 405). Nor did the reviewing physicians mention examination findings consistently made by plaintiff's treating pain specialist, Dr. Ray, following surgery on plaintiff's right knee in May 2010, which included tenderness of the right and/or left knee in November/December 2010 and January, February, March, April, May and June 2011 (Tr. 415, 416, 417, 418, 419, 420, 421, 423); swelling of the knees in November 2010 and January 2011 (Tr. 420, 423); decreased range of motion in December 2010 and January, March, April, May and June 2011 (Tr. 415, 416, 417, 418, 420, 421); moderate effusion of the left knee in May 2011 (Tr. 416); and observations that plaintiff ambulated with a stiff or antalgic gait pattern in December 2010 and January, February, March, April, May and June 2011 (Tr. 415, 416, 417, 418, 419, 420, 421).

Further, Drs. Green and Holbrook did not have the opportunity to review pertinent medical evidence related to plaintiff's knee impairments. Dr. Green's report was issued in March 2010, which was before the April 2010 MRI results documenting a meniscal tear with chondromalacia and arthritis within the right knee joint were obtained. (Tr. 404, 425). Dr. Green's report was also issued before plaintiff had surgery on her right knee in May 2010, which resulted in a diagnosis of chondromalacia with meniscal tear of the right knee with synovitis. (Tr. 461). Dr. Holbrook referenced plaintiff's complaints of right knee pain in his June 2010 assessment, but he made no mention of the right knee MRI or plaintiff's right knee surgery. (Tr. 366). Further, neither Dr. Green nor Dr. Holbrook had before them findings on examination related to both knees made in 2010 and 2011 by plaintiff's treating physician, Dr. Ray, following issuance of the reviewing physicians' reports.

Thus, it is clear that the reviewing physicians did not consider pertinent evidence pertaining to plaintiff's knee impairments. Further, no other physician of record assessed the functional limitations, if any, imposed by plaintiff's knee impairments. Accordingly, by adopting the assessments of the reviewing physicians for the sole reason that their opinions were consistent with "the medical evidence of record as a whole," without considering additional findings generated by plaintiff's treating physicians, the ALJ did not comply with her duty to "consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723 (citing 20 C.F.R. §§ 404.1520(a)(3), 404.1512(b), 404.1513). For these reasons, the ALJ's decision to adopt the opinion of the state agency reviewing physicians finding no change in plaintiff's physical RFC subsequent to the prior ALJ decision is not supported by substantial evidence. Plaintiff's first assignment of error should be sustained for this additional reason.

### 3. Plaintiff's second and third assignments of error

In light of the Court's determination that plaintiff's first assignment of error should be sustained, it is not necessary to resolve plaintiff's second and third assignments of errors related to the vocational expert testimony provided at the ALJ hearing and the ALJ's assessment of plaintiff's credibility. ALJ Shaughnessy's hypothetical questions to the VE were premised on her adoption of ALJ Temin's RFC finding, which is not supported by substantial evidence for the reasons discussed above. Therefore, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009). In addition, it is not necessary to address plaintiff's credibility argument because the ALJ's reconsideration of the new and material

evidence of plaintiff's physical and mental impairments may impact the remainder of the ALJ's sequential evaluation, including the assessment of plaintiff's credibility. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's third assignment of error had merit, the result would be the same, *i.e.*, a remand for further proceedings and not outright reversal for benefits as explained below.

**III. Conclusion**

The record includes new evidence related to plaintiff's psychiatric and physical impairments which was not available to ALJ Temin when he issued his prior decision on July 28, 2009. The new evidence, if credited, is material because it shows changes in plaintiff's psychiatric and physical conditions which could warrant modifications of the prior RFC. The ALJ did not properly consider and weigh the medical findings and opinions related to the new evidence of psychiatric and physical impairments. Her decision to adopt the prior RFC is therefore not supported by substantial evidence.

In determining whether remand or reversal of this matter for an outright award of benefits is appropriate, the Court notes that remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176.

In light of the above, the Court finds that the appropriate remedy here is a sentence four remand under 42 U.S.C. § 405(g) for the ALJ to consider new and material evidence related to plaintiff's psychiatric and physical impairments and to obtain additional vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of § 405(g).

Date: _5/19/14_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

FRANCIS J. HUMPHRIES,                          Case No. 1:13-cv-377
    Plaintiff,                              Barrett, J.
                               Litkovitz, M.J.

    vs.


COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1980).